Moncure, P.,
delivered the opinion of the court.
The court is of opinion, that in August 1868 it was agreed between the Chesapeake & Ohio railroad company and M. F. Maury, that the latter, residing in Virginia, should be one of the trustees, Philo C. Calhoun, and William B. Duncan, of the city of New York, being the other two, in a deed' of trust to be executed by the said company, conveying their road and its appurtenances to secure the payment of their bonds, which they contemplated executing to the amount of ten millions of dollars, payable at Bichmond, New York or London, at the option of the respective holders on the 1st day of October 1898, and bearing interest at the rate of seven per cent, per annum, free of all government tax, payable semi-annually, either in Bichmond, New York or London as aforesaid, on the first days of April and October in each year; the object of which arrangement was to obtain the necessary funds to complete the line of the Chesapeake & Ohio railroad from Covington, Virginia, to the Ohio river, in the state of West Virginia, as well as to straiten the line between Bichmond and Charlottesville, in the state of Virginia; and that the said M. F. Maury should receive as his compensation, for acting as such trustee, *703 the sum of five thousand dollars, it being agreed that each of the other two trustees aforesaid should also receive a like sum of five thousand dollars for his pensation for so acting, making the aggregate sum of fifteen thousand dollars to be paid to the three trustees.
The court is further of opinion, that after the said agreement was made, to wit: on the 30th day of September 1868 a resolution was adopted by the board of directors of the Chesapeake & Ohio railroad company, that for the purpose of obtaining the necessary funds aforesaid, the president and treasurer of the said company be “ directed to make and execute unto four trustees, three of whom shall reside in New York city, and one in Virginia (whose aggregate pay shall be fifteen thousand dollars, that being the sum expected to be paid to three trustees), to be chosen by the president of the company, a mortgage to bear date October 1st, 1868,” conveying the property and franchises of the company to secure the payment of the said bonds; which mortgage was accordingly afterwards duly executed by all the parties and duly recorded; the same having been executed by the said company by their president and treasurer, and by the said four trustees, to wit: P. C. Calhoun, W. Butler Duncan, William Orton and M. P. Maury. And the said M.P. Maury, after the execution of the said mortgage, promptly proceeded to act as trustee under the same, and faithfully to discharge all his duties thereunder, until the further performance of his said duties was arrested and prevented by another deed of trust or mortgage bearing date the 15th day of January 1870, and duly recorded, which was executed as a substitute for the said mortgage of the 1st of October 1868. By the said deed of the 15th day of January 1870, the said com *704 pany conveyed their said road and its appurtenances and franchises to two of the said four trustees only, to wit: William Butler Duncan and Philo G. Calhoun, in trust to secure a loan of fifteen millions of dollars, which the said company contemplated negotiating, for the purpose of completing the constructioh and equipment of their road as aforesaid.
The court is further-of opinion, that although the said M. P. Maury might have been entitled under his first mentioned agreement with the said company to demand and have of them the sum of five thousand dollars, as his stipulated compensation for acting as trustee as aforesaid (though whether he would or not, is a question not necessary and not intended now to be decided), yet having accepted and executed the said deed of the 1st day of October 1868, he thereby, in effect, consented to accept one-fourth of the sum of fifteen thousand dollars, to wit: three thousand seven hundred and fifty dollars in lieu and instead of the said sum of five thousand dollars as compensation for acting as trustee aforesaid, he having, prior to the execution of the said deed, been informed of the adoption by the board of the said resolution of the 80th day of September 1868, which expressly stated that the aggregate compensation to be paid to the four trustees in the deed should be fifteen thousand dollars, instead of the same sum being paid to three trustees, as was formerly expected; and he cannot therefore now claim the said sum of five thousand dollars, and cannot claim more than the said sum of three thousand seven hundred and fifty dollars as such compensation.
The court is further of opinion: that the said M. P. Maury, or his personal representative, he being dead, is entitled to the said sum of three thousand seven and fifty dollars, with interest from the — day of Au *705 gust 1870, the day on which this suit was commenced, as compensation aforesaid; and the circuit court erred in not rendering a decree for that sum and instead of for the sum of one thousand dollars with interest from the 1st day of October 1868. Ho objection was made to the validity of the agreement, and no ground appears for any such objection. The occasion was a most important one. The purpose being to borrow ten millions of dollars for the completion of a railroad extending nearly through the centre of the state, and to obtain the loan upon the security of a deed of trust on the road and its appurtenances. The loan was expected to be obtained partly in England and partly in the United States. It was all-important, therefore, that trustees should be selected for the execution of the trust of known good character in both countries. It was deemed advisable by the company that one of the trustees should reside in Virginia, where and in "West Virginia, the road is located; and the rest in the city of. New York, where it was supposed that the money, or most of it, might be obtained. Or at least it was no doubt supposed, that through the influence of commercial men residing in that city, the money, or most of it, could be .obtained, there and elsewhere, at home and abroad. M. E. Maury was naturally selected by the company or its agents as the most suitable person to be selected as that one of the trustees who was to be.a resident of Virginia. And he consented to act as such for the compensation which was offered him, to wit: five thousand dollars; which he afterwards, by implication as aforesaid, agreed to reduce to three thousand seven hundred and fifty dollars. He did not seek the office, but was sought by those whose duty it was to make the selection. Hobody will doubt the wisdom- of the *706 selection under the circumstances. No person was more generally or more favorably known, at home or than M. F. Maury. And there was no person }n existence residing in Virginia, if anywhere else, who was likely to be able to do more than he to further the object in view, which was *to obtain a loan of ten millions of dollars on the security of the road. His fitness for the trust is not denied; nor his readiness at all times to perform its duties. He executed and acknowledged the deed, and thereby assumed its obligations. He promptly entered upon the duties of his office, and continued to perform them, and to do all that devolved upon him, or was required of him in that respect, until he was prevented from further actiern by the company; and he was superseded as trustee by the deed of the 15th day of January 1870, in which the said Duncan and Calhoun were alone named as trustees as aforesaid. This was done without the consent of M. F. Maury, and so far as appears from the record, without even informing him of what was intended or desired by the company. They had a right to reduce the number of the trustees in the deed if they thought fit to do so; but they were bound to pay the stipulated compensation of the one who was removed if he was prompt and faithful in performing Ms duties, and capable of doing so—as he certainly was. What right had the company to discharge from the trust, without the stipulated compensation, the trustee residing in Virginia, any more than those residing in New York? The trustee residing in Virginia might, if he had been consulted on the subject, have consented to remit a portion of the stipulated compensation, and to retire from the trust. But he was not consulted on the subject. He was discharged from the trust, and then it was proposed to compen *707 sate Mm for what he had done upon the rule of a quantum meruit.
And it is argued thqt because Orton, whose was first added to and then taken from the number of the trustees, accepted one thousand dollars in satisfaction of his claim to compensation, M. F. Maury should therefore accept a like amount in satisfaction of his. We cannot undertake in this ease to say what were Orton’s claims to compensation, nor whether he was reasonable or not in the settlement he made of them, nor to compare his claims with those of M. F. Maury. "They may have been very different in merit and degree. We have now only to do with those of M. F. Maury. And the question is, had the company a right by their own ex parte act to discharge themselves from liability to him for his stipulated compensation as trustee, he being entirely without fault in the matter, and the occasion for the agency of trustees therein not having ceased? In other words, had the company a right, after having stipulated with three trustees for a certain compensation to each for their services, to relieve themselves from liability, in whole, or in part, to one of them, by confining the residue of the trust to the other two, when there was no just cause of complaint against the third, and he had actually entered upon and discharged in part, and as far as he could, the duties of the trust? We know of no authority for any such right.
Beyond all question, the stipulated sum was not to be paid to the trustees for nothing, but as compensation for services; that is, for acting as trustees. Had they died without acting, or had all occasion for their acting ceased before any such action, then they would have had no claim to compensation; or had such death occurred, or such occasion ceased after partial and be *708 fore complete action in the matter, then there would have been ground for claiming an apportionment of' compensation. But here the trustee, M. F. Maury, qjq ncq ¿líe without acting, or before complete action, and there was no just ground for an apportionment, at jeag£ the consent of M. F. Maury, which was never given, nor indeed applied for, at least until after he was discharged from the trust as aforesaid.
The services for which the stipulated compensation was to be made to the trustees were services to be rendered in endeavoring to negotiate the desired loan of ten millions of dollars, and not services to be rendered in the event of a necessity for a sale of the trust subject to satisfy the loan in the event of its being made, and of default being made in the payment of the money and interest, or any part thereof. Compensation for any services which might be required of the trustees, in the event of any such default, was provided by law, and the terms of the deed, and was to consist of a commission upon the amount of any sales which might be made under the deed in case of any such default. ISTo precise time was named in the agreement for the payment of the stipulated compensation. It was payable by implication, either at the date of the agreement, or in a reasonable time thereafter, or, at all events, so soon as the contemplated loan was obtained, or failed of being obtained without any default on the part of the trustees. If the contemplated loan was not obtained through the agency in part of M. F. Maury, the failure so to obtain it was not by means of any default on his part. He promptly executed the deed of trust, entered upon his duties as trustee, and performed them as far as he possibly could. Why then is he not entitled to the full amount which was stipulated to be paid to him? Upon what principle can the just mea *709 sure of his compensation be reduced to less than one-third of the stipulated amount ? Upon the principle of a quantum meruit? He did not contract to his services upon that principle, but for a certain sum, as he had a right to do; and he has performed, and been ready, and offered to perform, his part of the con-ti’act fully. He did not warrant the success of his efforts, nor was his compensation to be conditional, or in proportion to such success, but it was to be an unconditional and certain sum. If that sum exceeds the actual value of his services to his employer, or appears to be a high compensation for the services actually rendered, or agreed to be rendered, still he is entitled to receive it, he being in no default in rendering them. His contract being unobjectionable, and he being in no default in regard to it, he is entitled to the full benefit of it according to its terms. It cannot be said that there was a failure of consideration in whole or in part. It does not appear, and is not probable, that M. F. Maury engaged, or could have engaged, in any other employment which afforded, or would have afforded, him any pecuniary benefit by reason of his not having to complete the execution of his duties as trustee, or, that if he had been permitted to complete the execution of those duties, he would thereby have been prevented from attending to any other business which he would have done if he had not been trustee. What reason then can there be for any abatement or apportionment of the stipulated compensation? and what rule can be adopted for Buch an apportionment ? Who can value the character of the trustee and his peculiar qualifications which fitted him for the office, and recommended him to the choice of the parties who selected him for that office? How can we know to what extent his business and his plans of life have been af *710 fected by his acceptance of this office ? He was wilbmg to accept it for the consideration which was offered With what propriety can it be now said that one thousand dollars, instead of the sum offered, more # 9 than three times that amount, would be adequate compensation for the services engaged ?
We deem it unnecessary to examine in detail the-cases referred to in the argument of the learned counsel,in the ease, as the opinion we have delivered seems to be founded on well settled principles of law.There is nothing in conflict with it in the cases referred to in the notes to Cutter v. Powell, 2 Smith’s-Leading Cases, 6th American edition, p. 39 marg., 44 top, and 2 Rob. new Pr., p, 405; nor in any of the-other cases referred to in the argument; as we think will appear by an examination of those cases.
We therefore think that the decree of the circuit court is erroneous, and ought to be reversed, and a decree rendered in comformity with the foregoing opinion.
The decree was as follows:
This day came again the parties by their counsel,, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the appellant, M. P. Maury, is entitled to receive of the appellees, the Chesapeake & Ohio railroad company, the sum of three thousand, seven hundred and fifty dollars ($3,750.00), instead of the sum of one thousand dollars, as compensation for his services as trustee as mentioned in the bill; and that the circuit court erred in rendering a decree for the latter sum and interest *711 as therein mentioned, instead of for the former sum with interest as hereinafter mentioned. Therefore, it is decreed and ordered that so much of the said of the said circuit court as is above declared to he erroneous, be reversed and annulled, and the residue 7 7 thereof affirmed; and that the said appellant recover of the said appellees his costs by him expended in the prosecution of his appeal aforesaid here. And this court, proceeding to render such decree as ought to have been rendered by the said circuit court, in lieu of so much of the decree of said court as is reversed as aforesaid, it is further decreed and ordered, that the said appellant-recover of the said appellees, the Chesapeake & Ohio railroad company, the said sum of three thousand seven hundred and fifty dollars, with interest thereon at the rate of six per centum per annum from the first day of August 1870 (that being the day of ■the institution of this suit) till paid, and his costs by him about his suit in the said circuit court expended. And leave is’ given to sue out execution therefor; and if the said execution shall prove unavailing, then the court will proceed to enforce the payment of the sum of money and interest herein decreed, under the terms of the trust deed.
Which is ordered to be certified to the said circuit court of Rockbridge county.
And at another day, to wit: on the 2d day of October, 1876—The court is of opinion that the lien of the decree appealed from being the. decree of the said court in this case, of the 24th day of April 1872, ought to be preserved by an affirmance of so much of the said decree as may be necessary for that purpose; and therefore it is decreed and ordered that the decree entered in this cause at the present term of the court, to ■wit: on the 21st day of September 1876, be amended, *712 by making the following addition thereto, to have the same force and efieet as if it had been inserted in the last mentioned decree, viz: It is decreed and or-<}ere(i that so much of the said decree appealed from as declares that it is “adjudged, ordered and decreed that the plaintiff receive of the said defendant, the Chesapeake and Ohio railroad company, the sum of one thousand dollars, with interest thereon at the rate of six per centum per annum from the first day of October 1868 till paid, and his costs about his suit in this behalf expended, and leave is given to sue out execution therefor; and if the said execution shall prove unavailing, then the court will proceed to enforce the payment of the sum herein decreed under the terms of the trust deed,” be and the same is hereby affirmed; and that the amount of the said decree so affirmed, including interest to the first day of August 1870, and costs, be credited as of that day on the amount for which the said decree of this court was entered, which decree of this court is to remain and continue in full force for the recovery of the said amount, subject to the said credit; and leave is also given to sue out execution therefor; and if the said execution shall prove unavailing, then the court will also proceed to enforce the payment of the said amount subject to the said credit under the ■ terms of the trust deed. But this court does not mean to decide in this cause that the amount due to the appellant, for which the said decree of the circuit court or this decree is rendered, is in fact provided for and secured by said deed of trust, that question not being before this court, and other persons than the parties to this suit being interested in the same. And it is decreed and ordered that the said former decree of this court be and the same is hereby so modified and altered as to make it conform to and be *713 ■consistent with this decree, which is to be read and considered as a part thereof.
Which is ordered to be certified to the said circuit court of Bockbridge county, together with and as a part of the said decree of the 21st day. of September 1876.
Decree reversed.